**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**JAMES NICHOLS and KATHERINE NICHOLS,**

                            **Plaintiffs,**

    vs.                                              5:12-cv-1068
                                                          (MAD/TWD)

**NIAGARA CREDIT RECOVERY, INC.,
CREDIT RECOVERY GROUP, INC.,
CAWLEY & BERGMANN, LLP,
CAVALRY PORTFOLIO SERVICES, LLC,
AND JCS GLOBAL ASSETS, LLC,**

                            **Defendants.**
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **WEISBERG & MEYERS, LLC**<br>5025 N. Central Ave. #602<br>Phoenix, Arizona 85012<br>Attorneys for Plaintiff | **DENNIS KURZ, ESQ.** |
| **MAURICE & NEEDLEMAN, P.C.**<br>5 Walter E. Foran Blvd., Suite 2007<br>Flemington, New Jersey 08822<br>Attorneys for Defendant Cavalry Portfolio<br>Services, LLC and Cawley and Bergman, LLP | **THOMAS R. DOMINCZYK, ESQ.** |
| **OFFICE OF CHARLES F. PITARRESI**<br>650 Fourth Street<br>Niagara Falls, New York 14301<br>Attorneys for Defendant Niagara Credit<br>Recovery, Inc. | **CHARLES F. PITARRESI, ESQ.** |

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

    Plaintiffs James and Katherine Nichols filed this action on July 3, 2012, against

Defendants Niagara Credit Recovery, Inc. ("NCR"), Credit Recovery Group, Inc. ("CRG"),

Cawley & Bergmann, LLP ("Cawley"), Cavalry Portfolio Services, LLC ("CPS"), and JCS Global Assets, LLC ("JCS"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*., and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. *See* Dkt. No. 1. Currently before the Court are the following motions: (1) Defendant Cawley's motion to dismiss for failure to state a claim; (2) Defendant CPS's motion to dismiss for failure to state a claim; (3) Plaintiffs' motion to dismiss Defendant NCR's counterclaim; and (4) Plaintiffs' motion for default judgment against Defendant JCS.

## II. BACKGROUND

Plaintiffs are residents of Syracuse, New York. *See* Dkt. No. 1 at ¶ 4. Plaintiff Katherine Nichols entered into a contract for payment with HSBC. *See* Dkt. No. 5 at 2. Plaintiffs failed to make all payments due under the terms of the contract and defaulted. *See id*. The remaining balance on the contract was $3,812.00, plus interest at the rate of 18.9% per annum from May 19, 2009 until paid. *See id*.

HSBC turned the debt over to JCS for collection, who then retained the services of CPS. *See* Dkt. No. 9 at 2. Plaintiffs allege that Cawley is the agent in fact of CPS and JCS, and that Cawley assumed responsibility for collecting the debt around September 21, 2010. *See* Dkt. No. 1 at ¶ 21. In September 2010, Plaintiffs' attorney, Weisberg & Meyers ("Weisberg") sent a letter to Cawley providing notice of its representation of Plaintiffs, and revoking any express permission for Defendants to contact Plaintiffs directly. *See id*.

On September 21, 2010, Plaintiff Katherine Nichols entered into an agreement with Cawley to settle her account in the amount of $1,000.00, to be paid by Plaintiff on or before September 24, 2010. *See id*. at ¶ 22. Plaintiff paid the agreed-upon settlement amount to JCS on September 23, 2010. *See id*. at ¶ 22. After the settlement was consummated, Plaintiff alleges that

JCS violated the terms of the agreement by selling the debt to CRG. *See id*. at ¶ 24. Defendant NCR then purchased Plaintiffs' contract for payment from CRG and is the sole owner of all right, title and interest in the contract. *See id*. at ¶ 25.

On January 18, 2012, an NCR employee left a voicemail message at the residential telephone number of Katherine Nichols' father-in-law, William Nichols. *See id*. at ¶ 26. In the message, NCR's employee stated the following:

> This message is for Katherine Nichols. Ms. Nichols, my name's Victoria Joy. I'm contacting you from the pre-legal division at NCR. I'm contacting you in regards to case number XXXXXX-8395. Your file was placed with me for the purpose of legal review and processing. I am currently showing a default status slated for Onondaga County. However, I am in the position to extend to you an out of court option, um, which I would like to discuss with you or your legal representative. The number I can be reached at is 716-236-0011 extension 503.

*See id*. Plaintiffs allege that in the message, NCR failed to state that the call was made for the purpose of confirming or correcting location information about Plaintiffs. *See id*. at ¶ 27.

On January 24, 2012, a similar message was left by NCR employee Victoria Joy on both Katherine and James Nichols' cell phones. *See id*. at ¶¶ 29-33. In these messages, the NCR employee failed to disclose that the communication was from a debt collector, which Plaintiff's contend amounts to NCR's failure to meaningfully disclose its identity. *See id*. at ¶ 31. Victoria Joy left messages on Plaintiffs' cell phones again on January 26, January 27, and March 7. *See id*. at ¶¶ 36-44. On March 8, 2012, NCR sent a letter to Plaintiffs, demanding payment for the account. *See id*. at ¶ 45. Plaintiffs contend that the repeated phone calls from NCR were made without their prior express consent and were made using an automatic telephone dialing system. *See id*. at ¶ 47.

3

Plaintiffs allege that CRG is liable for the actions of NCR, the debt collector it hired to collect the debt from Plaintiffs on its behalf. *See id*. at ¶ 55. Plaintiffs allege that NCR and CRG violated the following provisions of the FDCPA, 15 U.S.C. § 1692 and the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii):

(1) 15 U.S.C. § 1692b(1) by contacting a third party and failing to state that the call was made for the purpose of confirming or correcting location information about Plaintiffs and by providing the identity of Plaintiffs to a third party without such information being expressly requested, in connection with an attempt to collect a debt from Plaintiffs. *See id*. at ¶¶ 50-52.

(2) 15 U.S.C. § 1692c(b) *et seq*., by communicating with a third party in a manner other than that prescribed in the statute and without having received the prior consent of Plaintiffs or the express permission of a court of competent jurisdiction, and without the communication being necessary to effect a post-judgment remedy. *See id*. at ¶ 57.

(3) 15 U.S.C. § 1692d(6) by placing telephone calls without meaningfully disclosing the caller's identity. *See id*. at ¶¶ 62, 65.

(4) 15 U.S.C. § 1692e(2)(A) by falsely representing the character, amount, or legal status of Plaintiffs' alleged debt. *See id*. at ¶ 67.

(5) 15 U.S.C. § 1692e(5) by threatening to take an action against Plaintiffs that cannot be legally taken or that was not actually intended to be taken, which included but was not limited to: threatening to file a lawsuit against Plaintiffs on an alleged debt that was previously settled in full. *See id*. at ¶¶ 78, 80.

(6) 15 U.S.C. § 1692e(10) by using false representations and deceptive practices in connection with collection of an alleged debt from Plaintiffs. *See id*. at ¶¶ 83, 85.

(7) 15 U.S.C. § 1692e(11) by failing to notify Plaintiffs during each collection contact that the communication was from a debt collector. *See id*. at ¶¶ 93, 95.

>   (8)   15 U.S.C. § 1692f by using unfair or unconscionable means against Plaintiff in connection with an attempt to collect a debt. *See id*. at ¶¶ 98, 100.
>
>   (9)   47 U.S.C. § 227(b)(1)(A)(iii) by placing non-emergency calls to Plaintiffs' cellular telephones, without the prior express consent of Plaintiffs, using an automatic telephone dialing system. *See id*. at ¶¶ 108, 110.

Plaintiffs allege that Cawley, CPS, and JCS violated the following provisions of the FDCPA:

>   (1)   15 U.S.C. § 1692e(2)(A) by falsely representing the character, amount, or legal status of Plaintiff's alleged debt. *See id*. at ¶¶ 72, 74, 76.
>
>   (2)   15 U.S.C. § 1692e(10) by using false representations and deceptive practices in connection with collection of an alleged debt from Plaintiffs, by misrepresenting that Ms. Nichols owed an alleged debt, when in fact, the debt had previously been settled in full. *See id*. at ¶¶ 87, 89, 91.
>
>   (3)   15 U.S.C. § 1692f by using unfair or unconscionable means against Plaintiffs in connection with an attempt to collect a debt by proceeding with collection activities against Ms. Nichols, when the debt had previously been settled in full. *See id*. at ¶¶ 102, 104, 106.

Currently before the Court are Defendants CPS and Cawley's motions to dismiss for failure to state a claim, Plaintiffs' motion to dismiss NCR's counterclaim for breach of contract on the underlying debt, and Plaintiffs' motion for default judgment against JCS.

### III. DISCUSSION

**A.   Cawley and CPS' motions to dismiss for failure to state a claim**

On September 25, 2012, Defendant Cawley filed a motion to dismiss pursuant to Rule 12(b)(6), arguing that Plaintiffs' claims are barred by the one year statute of limitations contained in the FDCPA. *See* Dkt. No. 6-1 at 3. On November 26, 2012, Defendant CPS also filed a

5

motion to dismiss pursuant to Rule 12(b)(6), raising issues identical to those in Defendant Cawley's motion to dismiss. *See* Dkt. No. 15-1.

### *1. Standard of review*

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a

6

defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

### *2. Statute of limitations*

Actions under the FDCPA must be filed within one year from the date on which the violation occurred. *See* 15 U.S.C. § 1692k(d); *see also Coble v. Cohen & Slamowitz, LLP*, 824 F. Supp. 2d 568, 571 (S.D.N.Y. 2011). While a question may exist as to whether the cause of action accrues on the date upon which the allegedly unlawful communication is sent or received, there is no question that the latest date upon which the one year period begins to run is the date when a plaintiff receives an allegedly unlawful communication. *See Bates v. C & S Adjusters, Inc.*, 980 F.2d 865, 868 n.2 (2d Cir. 1992).

Plaintiffs commenced this action on July 3, 2012. *See* Dkt. No. 1. In the complaint, Plaintiffs do not assert any specific action on the part of Cawley or CPS after September 2010. *See id.* Cawley and CPS contend that in order for Plaintiffs' action against them to have been timely commenced, it must have been filed by September 2011. *See* Dkt. No. 6-1 at 3; Dkt. No. 15-1 at 6. In their response to Cawley's motion to dismiss, Plaintiffs allege for the first time that at some point after September 21, 2010, Cawley either failed to notify its client that the debt had been settled or that Cawley participated in the sale of the debt, as agent of the previous creditor, with knowledge that the debt had been settled in full. *See* Dkt. No. 9 at 3; Dkt. No. 12 at 3. Plaintiffs concede that the full extent of Cawley's involvement is presently unknown to them, as that information is in the sole possession of Cawley and/or the other Defendants. *See* Dkt. No. 9

at 3.  Plaintiffs contend that they are entitled to discovery to learn Cawley's involvement in the sale of the allegedly settled debt.  *See id*. at 3, n.1.

Plaintiffs contend that their action is timely because it was filed within one year of discovering the alleged violations of the FDCPA.  *See* Dkt. No. 9.  In order for this argument to be plausible, Plaintiffs must plead sufficient facts to support a finding that NCR was acting as the agent of the other Defendants.  Courts have recognized that "under Federal Rule of Civil Procedure 8, a plaintiff must plead facts sufficient to establish that the asserted agency relationship existed" and that "a plaintiff may not simply assert in conclusory terms that a party is another party's agent for purposes of vicarious liability."  *Johnson v. Dunkin' Donuts Franchising L.L.C.*, No. 11-1117, 2012 WL 1828028, *23 (W.D.Pa. May 18, 2012) (quoting *Millar v. Pitman Bd. of Educ.*, No. 10-4104, 2011 WL 2417141, *5 (D.N.J. Jun. 13, 2011) (citations omitted)); *Black v. JP Morgan Chase & Co.*, CIV.A. 10–848, 2011 WL 4102802 (W.D.Pa. Aug. 10, 2011) ("[c]onclusory allegations of agency" are not sufficient to state a claim of vicarious liability of a parent corporation for the actions of a subsidiary).

In order to hold a debt collector vicariously liable for the acts of the agent, the plaintiff must show (1) the agent and principal are both debt collectors; and (2) the principal has exercised control over the agent's conduct or activities.  *See Suquilanda v. Cohen & Slamowitz, LLP*, No. 10 Civ. 5868, 2011 WL 4344044, *4 (S.D.N.Y. Sept. 8, 2011).  Plaintiffs contend, and the parties do not dispute, that CPS and Cawley are both debt collectors under the FDCPA.  However, Plaintiffs have failed to plead any facts in support of a finding that CPS exercised control over the activities of Cawley, or that Cawley exercised control over the activities of NCR.  *See id*.; *see also Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246, 259 (E.D.N.Y. 2011).  Plaintiffs have only alleged that CPS placed the account with Cawley and that Cawley then engaged in certain

8

conduct. *See* Dkt. No. 1. Absent any allegations that CPS exercised control over Cawley's actions, CPS cannot be held liable for Cawley's conduct. In the absence of validly established agency relationships between CPS, Cawley, and NCR, Plaintiffs have not stated claims against Cawley and CPS within the applicable one-year statute of limitations. Consequently, these claims will be barred by the statute of limitations unless equitable tolling applies.

### 3. *Equitable Tolling*

As with any statute of limitations, the FDCPA is subject to equitable tolling in appropriate circumstances. *See Somin v. Total Community Management Corp.*, 494 F. Supp. 2d 153 (E.D.N.Y. 2007). Equitable tolling applies in extraordinary circumstances where a plaintiff shows: (1) the defendant concealed the existence of the plaintiff's cause of action; (2) the plaintiff remained ignorant of that cause of action until some point within the limitations period; and (3) the plaintiff's continuing ignorance was not due to lack of diligence. *See New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1083 (2d Cir. 1988). The concealment element is met when the plaintiff shows either that the affirmative acts of the defendant prevented discovery of the plaintiff's claim or that the wrong itself was self-concealing. *See id.*

Plaintiffs contend that equitable tolling should apply to their claims against Cawley and CPS because they did not know, or did not have reason to know, of the alleged FDCPA violation until January 24, 2012, when NCR began contacting Plaintiffs to collect the alleged debt. *See* Dkt. No. 9 at 2. Plaintiffs attempt to raise this argument for the first time in their response to Cawley's motion to dismiss and the complaint does not set forth any factual support for any claim of fraud or concealment on the part of Cawley or CPS. *See id.*; *see also* Dkt. No. 1. In the complaint, Plaintiffs simply allege that JCS sold the account after the September 23, 2010

settlement, but fail to allege any involvement in that sale by Cawley or CPS. *See* Dkt. No. 1 at ¶ 24. Although Plaintiffs may be able to allege facts plausibly stating a timely claim against Cawley and CPS, allegations not contained in the pleadings cannot be considered by the Court to test the legal sufficiency of Plaintiffs' complaint. *See Zick v. Waterfront Comm'n of N.Y. Harbor*, 2012 U.S. Dist. LEXIS 144920, *6-*7 (S.D.N.Y. Dec. 15, 2004). Accordingly, Plaintiffs' claims against Cawley and CPS are time barred and Defendants' motions to dismiss are granted.

### *4. Leave to amend*

It has long been "well-established that 'outright dismissal for reasons not going to the merits is viewed with disfavor in the federal courts.'" *Harrison v. Enventure Capital Group, Inc.*, 666 F. Supp. 473, 479 (W.D.N.Y. 1987) (quoting *Nagler v. Admiral Corporation*, 248 F.2d 319, 322 (2d Cir. 1957)). For this reason, "dismissals for insufficient pleadings are ordinarily with leave to replead." *Stern v. General Elec. Co.*, 924 F.2d 472, 477 (2d Cir. 1991). Leave to amend a pleading need not be granted, however, if it would be futile to do so. *See O'Hara v. Weeks Marine, Inc.*, 294 F.3d 55, 69 (2d Cir. 2002) (citing *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 55 (2d Cir. 1995)).

In the present matter, the Court finds that it is not clear at this point whether amendment would be futile; and, therefore, Plaintiffs will be afforded an opportunity to amend their complaint. Plaintiffs shall have twenty (20) days from the date of this Memorandum-Decision and Order to file their amended complaint.

**B.    Plaintiffs' motion to dismiss NCR's counterclaim**

On September 14, 2012, Defendant NCR filed a counterclaim against Plaintiffs for breach of contract. *See* Dkt. No 5 at ¶ 1. NCR purchased Plaintiffs' contract for payment with HSBC

and contends it is the sole owner of all right, title, and interest in and to this contract. *See id*. at ¶ 2. NCR contends that it has fully performed according to the terms of the contract and that, although payment was demanded, Plaintiffs failed to pay the indebtedness and defaulted on the obligation. *See id*. at ¶¶ 3,5. NCR seeks to recover the outstanding balance of $3,812.00 plus interest at a rate of 18.9% per annum from May 19, 2009 until the entry of judgment, as well as attorney's fees and costs. *See id*.

On October 9, 2012, Plaintiffs filed a motion to dismiss pursuant to Rule 12(b)(1), arguing that the Court lacks jurisdiction over the counterclaim. *See* Dkt. No. 8. at 1. Plaintiffs argue that the counterclaim arises under state law and bears no relation to Plaintiffs' claims. *See id*. Additionally, they contend that the exercise of supplemental jurisdiction would be inappropriate because Plaintiffs' claims and NCR's counterclaim do not derive from a common nucleus of operative fact. *See id*. at 2-3.

### *1. Standard of review*

When a party moves to dismiss a claim pursuant to Rule 12(b)(1), "the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction." *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993) (citations omitted). For the purposes of such a motion, "the allegations in the complaint are not controlling . . . and only uncontroverted factual allegations are accepted as true. . . ." *Id*. (internal citations omitted). Both the movant and the pleader are permitted to use affidavits and other pleading materials to support and oppose the motion to dismiss for lack of subject matter jurisdiction. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted). "Furthermore, 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to

11

the party asserting it.'" *Gunst v. Seaga*, No. 05 Civ. 2626, 2007 WL 1032265, *2 (S.D.N.Y. Mar. 30, 2007) (quoting *Shipping Financial Services Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)); *see also State Employees Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 77 n.4 (2d Cir. 2007) (holding that, in a motion to dismiss for lack of subject matter jurisdiction, a court "may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits").

### *2. Application of Section 1367's Standards for Supplemental Jurisdiction*

The Court has original jurisdiction over Plaintiffs' claims against NCR, which allege numerous violations of the FDCPA and TCPA pursuant to 28 U.S.C. § 1331. NCR's counterclaim for breach of contract raises only issues of state law and, therefore, the only basis for jurisdiction over that claim is supplemental jurisdiction under 28 U.S.C. § 1367. The exercise of supplemental jurisdiction is appropriate where the state and federal claims are so related that they "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). State and federal claims form "one case or controversy" when they "derive from a common nucleus of operative facts or when both claims would normally be expected to be tried in a single judicial proceeding." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966). A counterclaim is deemed to be compulsory and must be brought if it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a). All counterclaims that are not compulsory are permissive, and may be brought at the discretion of the district court if they satisfy the requirements of 28 U.S.C. § 1367. *See* Fed. R. Civ. P. 13(b); *see also* 28 U.S.C. § 1367.

The basis for Plaintiffs' FDCPA and TCPA claims is the conduct of the various Defendants in their efforts to collect a debt from Plaintiffs.  The basis for NCR's breach of contract claim is Plaintiffs' performance on the contract they originally entered into with HSBC.  In a similar case, in which the defendant asserted a counterclaim for breach of contract in response to the plaintiff's claims for violations of the FDCPA, the court determined that the counterclaim was not compulsory because it did not arise from the same event as the FDCPA claim.  The court reasoned that,

> [a]lthough defendants' right to payment from plaintiff is certainly factually linked to the fairness of defendants' collection practices — there being no attempted collection without an alleged debt — a cause of action on the debt arises out of events different from the cause of action for abuse in collecting.  The former centers on evidence regarding the existence of a contract, the failure to perform on a contract, or other circumstances leading to the creation of a valid debt.  The latter centers on evidence regarding the improprieties and transgressions, as defined by the FDCPA, in the procedures used to collect the debt, regardless of the debt's validity.

*Ayres v. National Credit Management Corp.*, No. 90-5535, 1991 WL 66845, *1 (E.D.Pa. Apr. 25, 1991).  In the Second Circuit, even if the claim does not arise from the same "transaction or occurrence" so as to make it compulsory, the exercise of supplemental jurisdiction over a defendant's counterclaim is permissible if there is some loose factual connection between the counterclaim and the main claim.  *See Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 209 (2d Cir. 2004); *see also* Fed. R. Civ. P. 13(a).  Here, both causes of action are related to Plaintiffs' alleged default on the contract for payment with HSBC, thereby satisfying the same case or controversy standard set forth in Article III and 28 U.S.C. § 1367(a).

Satisfying the constitutional "case" standard of subsection 1367(a), however, does not end the inquiry a district court is obliged to make with respect to permissive counterclaims.  *See*

*Jones*, 358 F.3d at 213. The district court must consider whether any of the four grounds set out in subsection 1367(c) are present, which would entitle the court to decline to exercise supplemental jurisdiction. *See id.* Subsection 1367(c) provides that

> [t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if –
>
> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). In this case, subsections two and four are implicated, because allowing the breach of contract claim to be heard in this federal proceeding has the potential to predominate over the FDCPA claims, and because it could undermine the purpose of the FDCPA.

To analyze whether a state-law claim would substantially predominate over a federal claim, the Supreme Court has identified several factors for courts to consider: "the proof needed to establish the state-law issues; the scope of the state-law issues raised; and the comprehensiveness of the remedy sought." *Lynch v. U.S. Automobile Ass'n*, 614 F. Supp. 2d 398, 403 (S.D.N.Y. 2007) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726-27, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966)) (other citation omitted).

Here, the evidence required to prove the breach of contract claim is entirely separate from that related to Plaintiffs' FDCPA claims. A plaintiff can bring an FDCPA claim without a showing that a valid debt actually exists, thus the actual facts regarding the validity of the contract are immaterial to the FDCPA claim. *See Stover v. Northland Group, Inc.*, No. 05 CV 0476E,

14

2007 WL 1969724, *1 (W.D.N.Y. July 6, 2007). The merits of the FDCPA claim concern only NCR's activity after September 20, 2010 and are wholly separate from the merits of the breach of contract claim. Entertaining NCR's breach of contract claim would thus result in a "mini trial regarding the plaintiff's actual liability on the debt that the defendant was attempting to collect," unnecessarily allowing the breach of contract claim to predominate over Plaintiffs' FDCPA claims. *McCartney v. First City Bank*, 970 F.2d 45, 46 (5th Cir. 1992).

The reasons for declining to exercise supplemental jurisdiction under section 1367 (c)(4) are also compelling, given the remedial nature of the FDCPA. The FDCPA is "designed to protect consumers who have been victimized by unscrupulous debt collectors, regardless of whether a valid debt actually exists." *Baker v. G. C. Serv. Corp.*, 677 F.2d 775, 777 (9th Cir. 1982).

> To permit a defendant in a FDCPA action to use the federal proceedings as a forum for state grievances against a debtor-plaintiff would impede expeditious enforcement of the federal penalty. To allow a debt collector defendant to seek to collect the debt in the federal action to enforce the FDCPA might well have a chilling effect on persons who otherwise might and should bring suits such as this. Moreover, it would involve this Court in questions of no federal significance. Given the remedial nature of the FDCPA 'and the broad public policy which it serves, federal courts should be loath to become immersed in the debt collection suits of the target of the very legislation under which' a FDCPA plaintiff states a cause of action.

*Leatherwood v. Universal Business Service Co.*, 115 F.R.D. 48, 50 (W.D.N.Y. Feb. 27, 1987) (quoting *Roberts v. National School of Radio & Television Broadcasting*, 374 F. Supp. 1266, 1271 (N.D.Ga. 1974). Consistent with this reasoning, the Court declines to exercise supplemental jurisdiction over NCR's counterclaim and, therefore, Plaintiff's motion to dismiss the counterclaim is granted.

**C.    Plaintiffs' Motion for Default Judgment against JCS**

On January 21, 2013, Plaintiffs filed a notice of motion for default judgment against Defendant JCS pursuant to Fed. R. Civ. P. 55(b) and Local Civil Rule 55.2(b) on the grounds that JCS has failed to answer or otherwise defend in the action filed against it. *See* Dkt. No. 19. The Clerk of the Court entered the default against JCS on December 18, 2012. *See* Dkt. No. 19-2 at 2. JCS was served with Plaintiffs' complaint via personal service on August 10, 2012. *See* Dkt. No. 19-3. Service was properly effected under Fed. R. Civ. P. 4. *See id.* JCS failed to answer the complaint within the proscribed time period. *See* Dkt. No. 19.

"Rule 55(b) of the Federal Rules of Civil Procedure provides that when a party moves for judgment against an adverse party who has failed to answer or otherwise appear in the action, the court may enter judgment against the defaulting party." *Coated Fabrics Co. v. Mirle Corp.*, No. 06–CV–5415, 2008 WL 163598, *4 (E.D.N.Y. Jan. 16, 2008) (citing Fed. R. Civ. P. 55(b)). "That rule, in tandem with the Northern District of New York Local Rule 55.2, sets forth certain procedural prerequisites that must be met before a default judgment may be entered[.]" *Pert 35, Inc. v. Amari Aviation Ltd.*, No. 09–CV–0448, 2010 WL 1257949, *3 (N.D.N.Y. Mar. 5, 2010) (citations omitted). More specifically, in order to grant a plaintiff's motion for default judgment, the plaintiff must satisfy the following requirements: "1) show that the defendant was properly served with a summons and complaint; 2) obtain the entry of default; and 3) provide an affidavit setting forth the salient facts including, if the defendant is a person, showing that he or she is not an infant or incompetent, or a member of the United States Military Service." *Id.* (citing Fed. R.Civ. P. 55(b)(2); N.Y.N.D. L.R. 55.1 and 55.2) (other citation omitted).

"When a default judgment is entered, the defendant's failure to respond constitutes an admission of the well-pleaded factual allegations in the complaint, except as to claims relating to

16

damages." *Coated Fabrics Co.*, 2008 WL 163598 at \*4 (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)). In determining whether to enter a default judgment, the Second Circuit has cautioned that since a default judgment is an extreme remedy, it should only be entered as a last resort. *See Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981) (citations omitted). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be heard." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95–96 (2d Cir. 1993) (citations omitted). Thus, in light of the "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored." *Id*. (citations omitted). Accordingly, simply because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right. *See Erwin DeMarino Trucking Co. v. Jackson*, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

In considering a motion for default judgment, the Court is guided by the same three factors that apply to a motion to set aside entry of a default judgment. *See Buttnugget Publishing v. Radio Lake Placid, Inc.*, 807 F. Supp. 2d 100, 106 (N.D.N.Y. 2011); *see also Enron Oil Corp.*, 10 F.3d at 95; *Rodriguez v. Almighty Cleaning, Inc*., 784 F. Supp. 2d 114, 123 (E.D.N.Y. 2011) (citations omitted). Specifically, the court considers "(1) 'whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment.'" *Rodriguez*, 784 F. Supp. 2d at 123 (quotation and other citations omitted); *see also*

17

*Mason Tenders District Council Welfare Fund v. M & M Contracting & Consulting*, 193 F.R.D. 112, 114–15 (S.D.N.Y. 2000) (citation omitted).  "[B]ecause defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Enron Oil Corp.*, 10 F.3d at 96.

The Court finds that Plaintiffs have complied with the requirements of Fed. R. Civ. P. 55 as well as Local Rule 55.  Plaintiffs have also plead sufficient facts to state a plausible claim that JCS violated the FDCPA by falsely representing the character, amount, or legal status of Plaintiffs' alleged debt when JCS allegedly sold the debt to CRG some time after the settlement with Cawley on September 23, 2010.  *See* Dkt. No. 1 at ¶ 24.  Plaintiffs' motion for default judgment against JCS on the issue of liability is, therefore, granted.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendant Cawley's motion to dismiss (Dkt. No. 6) and Defendant CPS's motion to dismiss (Dkt. No. 15) are **GRANTED**; and the Court further

**ORDERS** that Plaintiffs' claims against Cawley and CPS are dismissed without prejudice and that Plaintiffs will have the opportunity to amend their complaint within twenty (20) days of the filing date of this Memorandum-Decision and Order; and the Court further

**ORDERS** that Plaintiffs' motion to dismiss Defendant NCR's counterclaim (Dkt. No. 5) is **GRANTED**; and the Court further

**ORDERS** that Plaintiffs' motion for default judgment as to liability against Defendant JCS (Dkt. No. 19) is **GRANTED**; and the Court further

**ORDERS** that this matter is referred to Magistrate Judge Dancks for all further pretrial matters; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  May 7, 2013
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge